

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

June 17, 2024

**Via ECF**
The Honorable James M. Wicks
United States District Court
Eastern District of New Yok
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

    Re: **Garcia v. Faby's Beverage Inc. et al.**
      **2:23-cv-09528-OEM-JMW**

Dear Judge Wicks,

  Our office represents Billy Joel Zegarra Garcia ("Plaintiff") and we submit this motion jointly with counsel for Faby's Beverage, Inc. d/b/a Thrifty Beverage and Fatayi Aliyu, as an individual, (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached after the parties' months-long negotiation process between experienced counsel.

  The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

  **I.**  **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

    **a. The Settlement Amount**

  The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $18,000.00.

    **b. Plaintiff's Position**

  Plaintiff commenced this lawsuit alleging, *inter alia*, that he was not paid proper overtime rates of pay and appropriate minimum wages in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff alleged that he was employed at Defendants' place of business located in 926 Nassau Road, Uniondale, NY 11553, from in or around September 2021 until in or around December 2021 and from in or around March 2022 until January 2, 2024, as a segregator and organizer.

During his employment, Plaintiff alleged that he regularly worked six (6) days per week from in or around September 2021 until in or around December 2021 and from in or around March 2022 until January 2, 2024.

Plaintiff further alleged that he regularly worked a schedule of shifts a schedule of shifts beginning at approximately 9:00 a.m. each workday and regularly ending at approximately 5:00 p.m. or later, six (6) days per week, from in or around September 2021 until in or around December 2021 and approximately 10:00 a.m. each workday and regularly ending at approximately 5:00 p.m. or later, six (6) days per week from in or around September 2021 until in or around December 2021 and from in or around March 2022 until January 2, 2024. 23. However, during the summer season, or the months of July, September, and August each year during his employment, Plaintiff was required to regularly work a schedule of shifts beginning at approximately 10:00 am each workday and regularly ending at approximately 8:00 p.m. or later, six (6) days per week.

Thus, Plaintiff alleged that he was regularly required to work approximately forty-eight (48) hours per week from in or around September 2021 until in or around December 2021; approximately forty-two (42) hours per week from in or around March 2022 until in or around June 2022, from in or around October 2022 until in or around June 2023, and from in or around October 2023 until January 2, 2024; and approximately sixty (60) hours per week during the summer season, or from in or around July 2022 until in or around September 2022 and from in or around July 2023 until in or around September 2023.

However, Plaintiff alleged that he was compensated at a flat hourly rate of approximately 13.00 per hour for all hours worked from in or around September 2021 until in or around December 2021; approximately $14.00 per hour for all hours worked from in or around March 2022 until in or around December 2022; and approximately $14.25 per hour for all hours worked from in or around January 2023 until January 2, 2024.

In total, Plaintiff alleged approximately $6,589.00 in unpaid overtime compensation and approximately $4,002.86 in unpaid spread of hours compensation.

Plaintiff believes the strongest aspect of this case is that, Defendants failed to maintain NYLL-compliant accurate and contemporaneous time records and pay records - both are required under applicable laws - with respect to the Plaintiff's actual hours worked and pay received. Upon information and belief, Defendants failed to maintain any records as to the dates of Plaintiff's employment, hours worked by Plaintiff or pay received by Plaintiff. To our knowledge, Defendants did not maintain any such contemporaneous pay or time records, and thus, none exist nor were produced in this matter

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of his alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a much later date in the future. Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to his wage claims.

### c. **Defendants' Position**

Defendants assert that Plaintiff's dates of employment and hours worked as set forth in the Complaint are exaggerated.

### d. **The Settlement Amount is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $18,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the lack of Defendants' records in this matter. Moreover, the settlement amount was only achieved after months-long negotiation process. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II.    **The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable**

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $18,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $11,516.67 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $725.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $405.00
- the costs of service of the Summons and Complaint on all Defendants: $320.00.

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($17,275.00), or $5,758.33 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $6,483.33.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $18,000.00
**Attorneys' Expenses:** $725.00
**Net Settlement Amount:** $17,275.00 ($18,000.00 - $725.00)
**Requested Attorneys' Fees:** $5,758.33 ($17,275.00 / 3)
**Total payable to Attorneys:** $6,483.33 ($5,758.33 + $725.00)
**Total payable to Plaintiff:** $11,516.67 ($18,000.00 - $6,483.33)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207

(E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.     Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*Katelyn M. Schillaci*
Katelyn M. Schillaci, Esq.